**STATE of Missouri ex rel. Robert E. REMY, d/b/a Armo Group, Respondent,**

v.

**Robert ALEXANDER, Ray Gerard, Glenn Robinson, Foster Plummer, and Pat Parnell, Constituting the Board of Adjustment of Branson, Missouri, Appellants.**

No. 24539.

Missouri Court of Appeals, Southern District, Division One.

Feb. 2, 2002.

Paul F. Sherman, Daniel, Powell & Kiefer, LLC, Springfield, for appellants.

Kendall McPhail, Lathrop & Gage, L.C., Springfield, for respondent.

KERRY L. MONTGOMERY, Judge.

The Board of Adjustment of Branson, Missouri ("Board") appeals from the final judgment of the circuit court that reversed its decision denying Robert E. Remy d/b/a ARMO Group ("ARMO") a building permit. Board raises two points on appeal. For reasons set forth below, the judgment of the circuit court is affirmed.

We review the Board's findings and conclusions, rather than those issued

by the circuit court. *State ex rel. Sander v. Board of Adjustment of the City of Creve Coeur,* 60 S.W.3d 14, 15 (Mo.App. 2001). Our inquiry is limited to determining whether the Board's action is " 'supported by competent and substantial evidence upon the whole record or whether it is arbitrary, capricious, unreasonable, unlawful, or in excess of its jurisdiction.' " *Hutchens v. St. Louis County,* 848 S.W.2d 616, 617 (Mo.App.1993) (quoting *Rice v. Board of Adjustment of the Village of Bel–Ridge,* 804 S.W.2d 821, 822 (Mo.App. 1991)).

In 1992 ARMO purchased approximately four acres of real estate located in the City of Branson. Two years later, ARMO submitted a request to split the four acres in half along a north-south line creating a western and eastern lot with each lot becoming approximately two acres in size.

After applying for a lot split, approval was granted by the acting city planner. The approved plat was then recorded with the recorder of deeds. ARMO subsequently sold the eastern lot to another developer for the construction of a motel. In 1999 ARMO requested a building permit for the western lot. That request was denied by the director of planning and development on the basis that ARMO needed to pave the street lying immediately north of the property to extend the city water line along the roadway, and to extend the sewer line to adjoining property.

ARMO appealed the director's decision to the Board which denied the appeal relying on § 430.090(D) of the Branson City Code. ARMO appealed Board's decision by filing a Writ of Certiorari to the Circuit Court of Taney County. The circuit court reversed Board's decision and found that, upon remand, ARMO was entitled to the issuance of a building permit if it could demonstrate that sanitary sewer service was accessible from a boundary line of the western lot owned by ARMO.

■ Board's first point on appeal alleges the trial court erred in reversing its decision because ARMO did not satisfy the lot split requirements of § 430.050.2 of the Branson City Code. Furthermore, Board contends that § 430.090(D) of the Branson City Code does not authorize ARMO a building permit until the required improvements are made.

Section 430.050.2 of the Branson City Code is set forth below:

*Lot splits.* If a proposed subdivision or reconfiguration of land does not contain more than three (3) lots, each of which have frontage on existing streets, not involving any new street or the extension of municipal facilities, or the creation of any public improvements, and not adversely affecting the remainder of the parcel or adjoining property and are not in conflict with any provision or portion of the Comprehensive Plan, Major Street Plan and Zoning Ordinance, and are otherwise within all regulations, the owner may proceed with the lot split procedure thus circumventing the normal requirements of subdivision as outlined in these regulations. The creation of new lots through a lot split procedure will require payment of all required impact fees and dedication on the same basis as creation of new lots in a regular subdivision.

■ In interpreting ordinances, we give words their plain and ordinary meaning, by considering the entire act and its purposes, and by seeking to avoid unjust, absurd, unreasonable, confiscatory, or oppressive results. *Firemen's Retirement System of St. Louis v. City of St. Louis,* 911 S.W.2d 679, 680 (Mo.App.1995). We will not impute an intent upon the lawmakers that is not evident on the face of the ordinance. *Id.* On its face, the regulation

permits landowners to circumvent the normal requirements for a subdivision if specific conditions are met, such as if the lot split does not create more than three parcels of land. Although the city approved ARMO's plat, the Board now argues that ARMO did not meet the requirements under the lot splitting provisions of § 430.050.2.

■■■ "The issuance of a building permit is a ministerial act which the building commissioner may not legally refuse to perform if the requirements of the governing city ordinances are met." *State ex rel. Kessler v. Shay,* 820 S.W.2d 311, 314 (Mo. App.1991); *State ex rel. Folkers v. Welsch,* 235 Mo.App. 15, 124 S.W.2d 636, 639–40 (1939).

In *Shay,* developer appealed a trial court's order dismissing his actions. Developer had sought various remedies and damages from the city for the city's failure to issue him a building permit. *Id.* at 315. The city had denied him a building permit because he had not paid costs to the city associated with road improvements for his subdivision plat. *Id.* It was the city's practice to withhold plat approval until these monies were paid. *Id.* However, developer's plat had already been approved by the city and had been recorded without exception. *Id.* The court held that the developer was entitled to have a building permit issued in reliance upon the approved plat. *Id.*[1]

Likewise, ARMO's proposed lot split was approved and signed by the acting city planner. According to its own policy, after the split was approved and signed, a copy of the plat was recorded. Board cannot now deny ARMO the issuance of a building permit after the city approved its plat.

■■■ Board also argues that § 430.090(D) of the Branson City Code does not authorize ARMO a building permit until the required improvements are made. This section states:

*Required Improvements Or Guarantees Prior To Final Approval.* Prior to recording of the final plat, the subdivider shall take out all public works permits and provide satisfactory surety in the form of a bond, cash or securities guaranteeing the installation of the improvements and provide a bond in conformance with Section 430.140 of this Chapter, "Maintenance Guarantee." No building permit will be issued by the City until the required improvements are available to each lot for which permits are requested.

Giving this ordinance its plain and ordinary meaning, as we must, *Firemen's Retirement System of St. Louis,* 911 S.W.2d at 680, building permits will not be issued if the required improvements are not *available* to each lot for which permits are requested. The plain and ordinary meaning of a word is generally derived from the dictionary. *Akers v. Warson Garden Apartments,* 961 S.W.2d 50, 53 (Mo. banc 1998). The dictionary definition of "available" is "suitable or ready for use" and "readily obtainable; accessible." RANDOM HOUSE DICTIONARY 142 (2d ed.1987). During oral arguments before us, the parties stipulated that the street and water and sewer lines extend to the western lot. Applying this definition, the improvements are available because they are ready for use, readily obtainable, and accessible to users of the western lot.

■■■ Unless a statute is unclear or ambiguous, we will not look past the plain and

---

1. The court noted in its decision that the city was not barred from pursuing the monies for road improvements by other proceedings. *Id.*

ordinary meaning of a statute. *Carmack v. Missouri Dept. of Agriculture,* 31 S.W.3d 40, 46 (Mo.App.2000). Nothing in the language of § 430.090(D) suggests that "available" means that water and sewer lines must extend across the property as the Board suggests. Point denied.

■ In its second point on appeal, Board contends the trial court erred in allowing additional evidence during the trial court's hearing that had not previously been presented at Board's hearing.

Section 89.110, RSMo (2000) provides, in part: "If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take additional evidence or appoint a referee to take such evidence as it may direct and report the same to the court...." This provision of § 89.110 has been interpreted to allow further evidence that touches upon the procedural legality of the hearings before the board but not evidence which deals with the merits of the case. *State ex rel. Weinhardt v. Ladue Professional Bldg., Inc.,* 395 S.W.2d 316, 321 (Mo.App.1965). To hold otherwise would change the nature of the hearing from one of review to one of *de novo* on the merits. *Id.* Even though the trial court erred in *Ladue* in allowing evidence on the merits of the case, the appellate court said that "we will disregard the testimony." *Id.*

Over Board's objections, the trial court allowed testimony from Bob Jones, a member of the ARMO partnership. His testimony was not pertinent to the procedural legality of the hearing that occurred before Board. Because his testimony dealt with the merits of the case, the circuit court should have sustained Board's objections to it. Like the appellate court in *Ladue,* we will disregard the testimony. However, disregarding Jones' testimony does not change our view of the proper result.

Therefore, we agree that the Board acted in an arbitrary, capricious, and unlawful manner regarding ARMO's request. ARMO is entitled to a building permit.

The judgment is affirmed.

SHRUM, P.J., and BARNEY, C.J., concur.