Curtis SADLER, Appellant,

v.

VILLAGE OF BEL-RIDGE, Respondent.

No. 52713.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 29, 1987.

Richard A. Barry, III, St. Louis, for appellant.

Michael J. McAvoy, Richard Bumb, Fenton, for respondent.

CRIST, Judge.

Curtis Sadler appeals a trial court ruling affirming the decision of the board of trustees of the Village of Bel–Ridge (Board). After a hearing, the Board upheld the decision of the Bel–Ridge Chief of Police (Chief) to dismiss Sadler from his position on the Bel–Ridge police force. We affirm.

Sadler, then a sergeant in the Bel–Ridge police department, was discharged from his job on January 10, 1986, because of an incident on December 26, 1985. On that day Sadler had left the police station while on duty to assist his fiancee because she was having car trouble in a neighboring community. He was gone about twenty minutes. Prior to leaving he did not inform anyone at the police station that he was leaving. On December 27, 1985, the Chief sent him a memo asking him to explain the incident of the day before. Sadler responded in writing and on January 10, 1986, he was called into the Chief's office and fired. Sadler appealed his termination to the Board. A hearing was held on February 13, 1986. The Board upheld Sadler's dismissal.

Sadler argues his "discharge was violative of due process" and that there was not sufficient evidence to support his dismissal. These claims are based on the premise he had a property interest in continuing employment; that he was not an employee-at-will.

Section 80.240, RSMo 1986, sets out the statutory powers of a village board of trustees to hire and discharge employees of the village. This power has been interpreted as allowing the Board to terminate an employee at will without cause. *State ex rel. Hicks v. Village of Bel–Ridge*, 669 S.W.2d 251, 253 [2] (Mo.App.1984). An employee's status as an employee at will can be changed by an employment contract or by statute, ordinance, or regulation. *Amaan v. City of Eureka*, 615 S.W.2d 414, 415 [1] (Mo. banc 1981) *cert. denied*, 454 U.S. 1084, 102 S.Ct. 642, 70 L.Ed.2d 619 (1981); *Karzin v. Collett*, 562 S.W.2d 397, 400 [3] (Mo.App.1978). Sadler asserts the terms of his employment were changed either by General Order 84–G–016, establishing guidelines for dealing with discipline,

deportment and grievances within the Bel–Ridge police department, or by a 1984 mutual release entered into by Sadler and the Village of Bel–Ridge after a prior dismissal of Sadler.

■ The previous termination of Sadler's employment as a Bel–Ridge police officer was dealt with at an April 1984 meeting of the Board. Sadler sought relief from this termination by contacting the United States Equal Employment Opportunities Commission. On June 30, 1984, Sadler and Bel–Ridge reached an agreement whereby Sadler was reinstated in the police force without loss of seniority, pay or other benefits. Under the terms of this mutual release, both parties waived any claims "arising from, related to, or connected with, directly or indirectly ... the employment and/or termination of [Sadler] ... thru the present date...." Sadler does not allege his dismissal in January of 1986 arose from the 1984 termination and reinstatement. The mutual release neither explicitly nor implicitly changed Sadler's status from an employee at will to an employee who could only be discharged for cause.

We next consider whether general order 84–G–016 changed Sadler's status so that he was no longer an employee at will. In his petition Sadler alleged "the Board presides over the evidenciary [sic] hearing provided for by General Order 84–6–016 [sic] of the Village of Bel–Ridge Police Department, which was ratified by the Board." In its answer, respondent admitted this allegation. Thus, we do not need to consider whether the Board adopted or approved the order. See State ex rel. Hicks, 669 S.W.2d at 251. The issue before us is whether General Order 84–G–016 changed Sadler's status.

■ General Order 84–G–016 "[p]rovides policy in reference to disciplinary action, deportment of personnel, grievances, privileges and procedures, and the appeal rights of the Bel–Ridge Police Department personnel." It authorizes any supervisory officer to reprimand a subordinate for cause and any commander to reprimand or suspend a subordinate for cause. The order also gives "[t]he Chief of Police ... the sole authority for administering disciplinary actions other than ..." those allowed all supervising officers and commanders. The penalties the Chief may impose are enumerated in the order and include dismissal from the police department. The plain wording of General order 84–G–016 does not limit the Chief's right to terminate an employee without cause. See City of Flat River v. Short, 694 S.W.2d 767, 768 [3] (Mo.App.1985). It certainly does not limit the power the Board has under § 80.240 to terminate an employee without cause. See e.g. State ex rel. Gorris v. Mussman, 612 S.W.2d 357, 360–61 [1] (Mo.App.1980) (city ordinance limiting power of city administrator of fourth class city to terminate employees at will did not limit power of board of alderman as to termination of employees).

General Order 84–G–016 also details the right of a disciplined or dismissed police department employee to appeal a decision of the Chief. The granting of a right to appeal does not of itself change an employee's status as an employee at will. Cooper v. City of Creve Coeur, 556 S.W.2d 717, 721 [6] (Mo.App.1977).

■ Sadler was an employee at will of the Bel–Ridge police department and as such his employment could be terminated at any time for any reason or no reason as long as it was unrelated to the subject of the 1984 mutual release. Although he could be terminated at will, Sadler was given an explanation for his termination and he was given a hearing in front of the Board. The due process he received would have been sufficient even if there had been a protected property interest in continuing employment. Additionally, if Sadler could only have been terminated for cause the evidence of his actions justified his termination.

Due process requires that an employee receive notice and an opportunity for a hearing. Where the post-termination hear-

ing is not unduly delayed a pre-termination hearing may be unnecessary. *Belton v. Board of Police Commissioners of Kansas City,* 708 S.W.2d 131, 137–38 [7–8] (Mo. banc 1986). Sadler was asked by the Chief to detail the incident for which he was later terminated. He had notice the incident was being investigated. After he was terminated he was given a hearing. At that hearing, in front of the Board he was represented by counsel, presented evidence and cross-examined witnesses. The Board then made an independent assessment and affirmed Sadler's termination. The rules established by the Village of Bel–Ridge in General Order 84–G–016 were complied with. *See Collier v. Metropolitan St. Louis Sewer District,* 706 S.W.2d 894, 896 [1] (Mo.App.1986). The process given Sadler would have satisfied the due process requirement if there had been a property interest in continued employment.

 When there is a right to continued employment a termination must be justified. Bel–Ridge General Order 84–G–016 defines the "[f]ailure to observe and obey any rule, regulation, procedure or order," and the "absence from duty without authorization" to be punishable offenses. The rules to be obeyed included leaving the Village of Bel–Ridge when on duty, without permission; keeping knowledgable about departmental rules; devoting time and attention to police business; and not leaving duty without being properly relieved. It was for violating the above rules that Sadler was dismissed. The evidence supports the Board's findings and its affirmation of his termination.

Judgment affirmed.

GARY M. GAERTNER, P.J. and REINHARD, J., concur.