**STATE ex rel. Thomas LUPO, Relator/Appellant,**

v.

**CITY OF WENTZVILLE, Missouri, a Municipal Corporation, Darrel Lackey, as its Mayor, N. Reynolds, W. Blake, G. Lippert, W. Rauschelbach, A. Ritter, and E. Walsh, as Members of its Board of Aldermen, Respondents/Respondents.**

No. 64236.

Missouri Court of Appeals, Eastern District.

Nov. 8, 1994.

Martin M. Clay, Edwards, Singer, Wolk & Spoeneman, Clayton, for appellant.

Robert M. Wohler, O'Fallon, for respondents.

CRANE, Presiding Judge.

Thomas Lupo petitioned the Circuit Court of St. Charles County for a Writ of Mandamus to compel the City of Wentzville through its mayor and aldermen to give him a "hearing" pursuant to § 590.500 RSMo (Cum. Supp.1993) after the City terminated him as a police officer. He appeals the circuit court's judgment in favor of Wentzville. We affirm.

In this court-tried case, we defer to the trial court's implicit determinations of credibility, view the evidence and permissible inferences in the light most favorable to the judgment, and disregard all contrary evidence and inferences. *Johnston v. Bates,* 778 S.W.2d 357, 363 (Mo.App.1989). Lupo began employment as a police officer for the City of Wentzville on May 30, 1990. At 10:30 p.m. on October 19, 1992, Wentzville Police Chief Loyde K. Davidson met with Lupo and gave him a three page letter, addressed to Lupo from Davidson and dated October 16, 1992. It advised Lupo he was being suspended without pay pending a termination hearing before the Board of Aldermen. The letter set out thirteen violations of Wentzville ordinances and S.O.P. manuals. It informed Lupo that a hearing would be held on October 28, 1992 at 9:00 p.m., named the witnesses who would appear, and advised Lupo that he had the right to be represented and to confront and cross-examine witnesses at the hearing, and that he could present his testimony at an open or closed session of the Board. Davidson gave Lupo an opportunity to read the letter and discuss it. They met for approximately two hours.

Davidson talked to Lupo on the morning of October 28. Lupo told him he was not going to attend the hearing that night because he felt it would not do any good and would be a waste of time. Lupo did not appear for the scheduled hearing. The witnesses were present, but, because Lupo did not appear, they did not testify. Instead, Davidson presented to the Board a binder containing the witnesses' statements, Lupo's statements, and pertinent ordinances, regulations, and orders. In its minutes, the Board noted that Lupo failed to appear, accepted Davidson's report on its merits, and then accepted Lupo's resignation by a vote of five to one. On October 29, 1992 Mayor Darrel Lackey sent a memorandum to Lupo setting out findings of facts relating to the notice, the hearing, Lupo's failure to appear, and the Board's vote terminating Lupo's employment and accepting his resignation. It also set out Wentzville's authority to terminate appointed employees under § 79.240 RSMo 1986.

Lupo sent a letter to Davidson dated October 30, 1992 requesting a hearing pursuant to § 590.500 RSMo (Cum.Supp.1993) and

claiming he was not notified of the previous hearing. Davidson denied this request by letter dated November 6, 1992 in which he advised Lupo that he had his "opportunity for a 'meeting' as provided in Section 590.500 and [he is] not entitled to a second one because [he] elected not to attend the first".

On January 7, 1993, Lupo filed a petition in mandamus asking that Wentzville, its mayor, and aldermen be ordered to conduct a "hearing" pursuant to § 590.500. The circuit court issued a preliminary order in mandamus. Wentzville filed its answer. The court held an evidentiary hearing on June 3, 1993 and entered judgment in favor of Wentzville on June 7, 1993. The trial court found "that the provisions of Section 590.500 RSMo were satisfied in that on October 19–20, 1992 [Lupo] was given notice of suspension pending dismissal at a hearing to be held on October 28, 1992, before the Board of Aldermen; that [Lupo] failed to appear at such hearing; that [Lupo] is not entitled to a subsequent hearing." Lupo appeals from this judgment.

■ A relator may appeal from an adverse final determination in mandamus if a preliminary order was issued. *State ex rel. Casey's General Stores, Inc. v. City Council of Salem*, 699 S.W.2d 775, 776 (Mo.App.1985). On appeal, mandamus is reviewed as other non-jury civil matters. *Id.* Therefore, we sustain the judgment of the trial court in a mandamus action unless no substantial evidence exists to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *State ex rel. Kessler v. Shay*, 820 S.W.2d 311, 314 (Mo. App.1991) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

For his first point Lupo does not claim any trial error, but sets out why the trial court's order is appealable. Accordingly, there is nothing for us to review under this point.

■ For his second point Lupo contends that "[a]s a matter of law, relator was entitled to request and have a post-disciplinary hearing following his termination by the Board of Alderman [sic]." This point fails to satisfy Rule 84.04(d) because it does not specify (1) an error by the trial court or (2)

wherein or why the trial court erred. *See Thummel v. King*, 570 S.W.2d 679, 684–85 (Mo. banc 1978). In our discretion, we will review the point on its merits.

■ Lupo first argues that the Board had a ministerial duty under § 590.500 to provide him a post-disciplinary "hearing" following its October 28, 1992 meeting. "Mandamus will issue to compel the performance of a ministerial duty but not to compel the performance of a discretionary duty." *Kessler*, 820 S.W.2d at 314. "As applied to a public official, a ministerial act is defined as an act that the law directs the official to perform upon a given set of facts, independent of what the officer may think of the propriety or impropriety of doing the act in a particular case." *Id.* The legal right, to be enforced by mandamus, must be "clearly established and presently existing." *State ex rel. Treasurer v. Siedlik*, 851 S.W.2d 80, 81 (Mo.App.1993). To determine whether the right to mandamus is clearly established and presently existing, we examine the statute under which the relator claims the right. *Id.*

Section 590.500 provides that certain law enforcement officers "shall be given upon written request a meeting within forty-eight hours of a dismissal, disciplinary demotion or suspension that results in a reduction or withholding of salary or compensatory time." § 590.500 RSMo (Cum.Supp.1993). The requirements of the meeting are as follows:

> The meeting shall be held before any individual or board as designated by the governing body. At any such meeting, the employing law enforcement agency shall at minimum provide a brief statement, which may be oral, of the reason of the discharge, disciplinary demotion or suspension, and permit the law enforcement officer the opportunity to respond. The results from such meeting shall be reduced to writing.

*Id.* The statute further provides that:

> Any law enforcement agency that has substantially similar or greater procedures shall be deemed to be in compliance with this section.

*Id.*

■ Wentzville is a fourth-class city. Under §§ 79.230 and 79.240 police officers of

fourth-class cities are employees at will and may be removed for no reason or any reason by the mayor with consent of the Board of Aldermen. *Rapp v. City of Northwoods,* 769 S.W.2d 815, 818 (Mo.App.1989); *Johnson v. City of Buckner,* 610 S.W.2d 406, 408–09 (Mo.App.1980); *Cooper v. City of Creve Coeur,* 556 S.W.2d 717, 720 (Mo.App.1977); *see also Karzin v. Collett,* 562 S.W.2d 397, 399 (Mo.App.1978). An employee at will has no property interest in his or her employment and is not entitled to procedural due process upon termination. *Amaan v. City of Eureka,* 615 S.W.2d 414 (Mo. banc 1981); *Armer v. City of Salem,* 861 F.2d 514, 515 (8th Cir. 1988). Thus, an employee at will is not entitled to a notice and/or hearing prior to termination to contest the reasons for termination. *Johnson,* 610 S.W.2d at 409–10; *Rapp,* 769 S.W.2d at 818.

██ Section 590.500, enacted in 1990, does not change Lupo's at-will status but gives certain police officers a right to a post-disciplinary "meeting" upon request at which the employer is to give the officer the reasons for the disciplinary action and permit the officer to respond. The statute provides that "[a]ny law enforcement agency that has substantially similar or greater procedures shall be deemed to be in compliance with this section." § 590.500 RSMo (Cum.Supp.1993). "Greater" can refer to superiority in many different respects, including quality, character, number, scope, and effectiveness. By way of illustration and not limitation, "greater procedures" would include procedures which provide the officer with a greater or more formal opportunity to assert, advance, or protect his or her position or to contest or rebut the law enforcement agency's position.

The meeting contemplated by § 590.500 takes place after the disciplinary action and requires only that the law enforcement agency provide a statement of the reasons for the disciplinary action and give the officer an opportunity to respond. It gives a forum for both sides to offer explanations; it does not affect the process by which the disciplinary decision was reached or the decision itself.

██ On the other hand, the hearing provided by Wentzville gave Lupo the opportunity to affect the process and outcome before the decision was made and did so by more formal procedures. Wentzville provided Lupo with an aldermanic hearing upon his suspension pending dismissal. He was given advance notice of the hearing and was advised he could be represented by counsel, present testimony, and cross-examine Wentzville's witnesses, who were listed in the notice. The notice set out in detail the reasons for the disciplinary action. After the hearing Lupo was provided with written findings relating to the Board's action. These procedures afforded Lupo both greater and more formal opportunities to assert, advance, and protect his position and to contest Wentzville's position than those provided by § 590.500. Since Wentzville provided greater procedures than those provided in § 590.500, it complied with § 590.500.

██ Lupo also argues he is entitled to a post-disciplinary meeting after each disciplinary action by the Board and that his failure to attend the October 28 hearing which followed his suspension did not preclude him from requesting a § 590.500 meeting after his dismissal on October 28. We disagree. The October 16 letter clearly advised Lupo that the October 28 hearing would concern "his dismissal". Since Lupo failed to appear at the October 28 hearing, he waived his rights under § 590.500 and may not now claim he was not accorded rights due under that section.

██ Mandamus will only issue when there is an unequivocal showing that the public official failed to perform a ministerial duty imposed by law. *State ex rel. Pitts v. Roberts,* 857 S.W.2d 200, 202 (Mo. banc 1993). By providing Lupo with greater procedures than § 590.500 requires, the City complied with § 590.500. The trial court did not err in denying the petition for a writ of mandamus.

██ For his third point Lupo asserts the trial court erred in finding that he was given adequate notice of a hearing. Lupo argues that his testimony that he never received notice of the October 28 meeting or received that part of the October 16 letter which contained the written notice made the trial court's finding against the weight of the evidence. We disagree.

732

Under *Murphy v. Carron,* a judgment must be affirmed if it is supported by substantial evidence and is not against the weight of the evidence. "Where there is a conflict in evidence, the trial court has the prerogative to determine credibility of witnesses, accepting or rejecting all, part or none of the testimony." *Fountain v. Schlanker,* 651 S.W.2d 594, 596 (Mo.App. 1983). Davidson's testimony that he gave Lupo the three page October 16 letter which contained the notice of the hearing and that Lupo was aware of the hearing when they met on the morning of the hearing is substantial evidence. Although Lupo offered contradictory testimony, we defer to the trial court's resolution of credibility. *Johnston,* 778 S.W.2d at 363.

For his fourth point Lupo asserts the trial court erred in not awarding damages, costs, and attorney's fees pursuant to § 529.060 RSMo 1986. Section 529.060 provides that damages and costs may be recovered by the relator if the verdict or judgment is in that person's favor. As the judgment here was not in Lupo's favor, he is not entitled to recover damages, costs, or attorney's fees. *State ex rel. Dallavalle v. Baine,* 630 S.W.2d 569, 571 (Mo. banc 1982).

*Conclusion*

The judgment of the trial court is affirmed.

CRANDALL and DOWD, JJ., concur.